IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | CHAPTER THIRTEEN |
| FRANK G. TROSKY and PATRICIA G. TROSKY DEBTORS | : | BANKRUPTCY NO. 5-05-bk-51389 |

***

| | | |
|---|---|---|
| M & T MORTGAGE CORPORATION MOVANT | : | {**Nature of Proceeding**: M&T Mortgage Corp. Motion for Relief from the Automatic Stay (Doc. #19)} |
| vs. | : | |
| FRANK G. TROSKY and PATRICIA G. TROSKY RESPONDENTS | : | |

***

| | | |
|---|---|---|
| FRANK G. TROSKY and PATRICIA G. TROSKY PLAINTIFFS | : | {**Nature of Proceeding**: Complaint to Determine Secured Status and Avoid Liens} |
| vs. | : | |
| M & T MORTGAGE CORPORATION f/k/a Franklin First Savings Bank, DEFENDANT | : | ADVERSARY NO.: 5-05-ap-50183 |

# OPINION[1]

Pending before the Court is the disposition of both the Debtors' *Complaint to Determine Secured Status and Avoid Liens* (Doc. No. 1 to 5-05-ap-50183) and M&T Mortgage Corporation's ("M&T") Motion for Relief from Stay to proceed with a quiet title and ensuing foreclosure action (Doc. No. 19 to 5-05-bk-51389). For the following reasons, M&T's Motion for Relief from Stay is denied insofar as it seeks relief to pursue a quiet title action in state court, but granted insofar as it seeks to pursue a foreclosure action in state court. The prayer seeking to

---

[1] Drafted with the assistance of Kathryn F. Evans, Law Clerk.

[m:\users\cathy\opinions\...\5-05-bk-51389_Trosky.wpd]

avoid M&T's lien in Debtor's complaint is denied, and the current status of M&T's lien is discussed below.

**I. Background**

Debtors voluntarily mortgaged their interest in their home located at 75 Morio Drive, Mountaintop, Pennsylvania, on August 11, 1995 to M&T's predecessor, Franklin First Savings Bank for $129,300. At that time, M&T properly recorded the mortgage in Luzerne County. Thereafter, M&T erroneously[2] recorded a satisfaction of this mortgage in Luzerne County on February 5, 1998. On June 22, 1998, PNC Bank filed a mortgage on the property. HSBC Mortgage Services ("HSBC") filed another mortgage against the property recorded on September 9, 1999. The parties have stipulated that the Debtors did not personally pay off the M&T mortgage.

**II. Motion For Relief From Stay To Proceed with a State Court Quiet Title Action**

M&T is seeking relief from the automatic stay to allow them to proceed with their quiet title action and/or mortgage foreclosure on the mortgage premises in state court. (Doc. No. 19, 5:05-bk-51389.) This request is denied with respect to leave to proceed with its quiet title action[3]. Although the determination of property rights in the assets of a debtor's estate is governed by state law[4], the Court finds there is sufficient Pennsylvania precedent, including

---

[2] The Debtors dispute whether the recordation of the satisfaction was erroneous. (See Doc. No. 14, *Debtors' Brief in Regard to the Legal Issues Presented in Both Debtors' Adversarial Complaint and Motion for Relief of M&T* at 4.) However, the parties supplied the Court with a stipulation of facts, the second fact being "M&T erroneously recorded a satisfaction of the mortgage in Luzurne [sic] County Pennsylvania recorder of Deeds' office on February 5, 1998." (Doc. No. 12, *Stipulation of Facts.*) The Court accepts the Stipulation of Facts as true and finds the satisfaction to have been recorded in error.

[3] Pa.R.C.P 1061(b) Quiet title actions include actions to determine the validity of liens and priority of liens.

[4] *Butner v. U.S.,* 440 U.S. 48, 54-55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979).

precedent from the Pennsylvania Supreme Court directly on point, to allow this Court to resolve the issues involved herein pursuant to the Court's concurrent jurisdiction with the state courts under 28 U.S.C. § 1334(b). Applicable Pennsylvania law includes: *Appeal of Myron*, 3. Pennyp. 211, *4 (Pa. 1883), WL 13552 (Pa.); *Appeal of Callahan*, 124 Pa. 138, 144, 16 A. 638 (1889) *Saint v. Cornall*, 207 Pa. 270, 56 A.440 (1903)[5]; *A-1 Discount Co. v. Nardi,* 735 A.2d 121, 123 (Pa. Super. 1999); and *Alliance Funding Co. v. Stahl*, 829 A.2d 1179 (Pa. Super. 2003).

### III. Complaint to Determine Secured Status of M&T's Lien

Debtors are attempting to avoid/strip off or strip down M&T's mortgage by using a combination of Bankruptcy Code Sections 522(h), 544, 1322(b)(2), and 506(d).

**1. The Lien As Applied to the Debtors is Still Valid**

As discussed above, state law governs the determination of property rights in the assets of a debtor's estate. See *Butner v. U.S.,* 440 U.S. 48, 54-55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). Turning to Pennsylvania law, the first issue to address is what effect filing an erroneous satisfaction[6] has on a mortgagee's security interest. "Entry of satisfaction on the margin of the mortgage at the Recorder's office creates the presumption that the mortgage has been discharged, but the presumption may be rebutted." Kenneth E. Grey, *Pennsylvania Mortgages* § 9-5 (2d ed.); *St. Clement's Building & Loan Ass'n v. McCann,* 126 Pa. Super. 20, 190 A. 393,

---

[5] The Court finds that despite these opinions' publication dates, they remain good authority since they have not been overturned by subsequent courts ruling on the same issue. *St. Clement's Building & Loan Ass'n v. McCann,* 126 Pa. Super. 20, 190 A. 393, 294 (1934); *A-1 Discount Co. v. Nardi,* 735 A.2d 121, 123 (Pa. Super. 1999); and *Alliance Funding Co. v. Stahl*, 829 A.2d 1179 (Pa.. Super. 2003).

[6] Section 681, 21 P.S. 681, addresses the satisfaction of mortgages by satisfaction piece and provides: "Any mortgagee of any real or personal estates in the Commonwealth, having received full satisfaction and payment of all such sums and sums of money as are really due to him by such mortgage, shall, at the request of the mortgager, enter satisfaction either upon the margin of the record of such mortgage recorded in the said office or by means of a satisfaction piece, which shall forever thereafter discharge, defeat and release the same; and shall likewise bar all actions brought, or to be brought thereupon."

294 (1934). A multitude of Pennsylvania courts have found a satisfaction inadvertently and erroneously applied to the wrong mortgage may be set aside in equity, and the mortgage reinstated when in reality the mortgage was not paid. See *A-1 Discount Co. v. Nardi,* 735 A.2d 121, 123 (Pa. Super. 1999), *Alliance Funding Co. v. Stahl*, 829 A.2d 1179 (Pa. Super. 2003), *St. Clement's Building & Loan Ass'n,* 190 A. At 393 at 394, *Appeal of Myron* 3. Pennyp. 211, *4 (Pa 1883) (Pennsylvania Supreme Court holding the satisfaction of a mortgage may be set aside for mistake).

The primary Pennsylvania authority for setting aside erroneous satisfactions remains *St. Clement's,* wherein the court (addressing a situation similar to the instant case) reasoned:

> The record is not necessarily conclusive upon the parties as there is nothing so sacrosanct about the satisfaction of a mortgage that stops the truth from being shown. All that is incumbent upon the part of this plaintiff to attain the relief it seeks is to prove the defendants were not entitled to have the mortgage satisfied . . .. On the same principle, a release or satisfaction entered by accident or inadvertence, as where it is made to apply to the wrong mortgage, or by a mistake as to an essential fact, so that it is not in accordance with the real intention of the party, may be set aside and the mortgage reinstated, except as the rights of third persons may prevent.

*Alliance Funding Co.* 829 A.2d at 1182 (quoting *St. Clements,* 190 A. at 394.)

Here, the Court finds that M&T has presented sufficient evidence to show the Troskys were not entitled to have the mortgage satisfied. Thus, under the aforementioned reasoning of *St. Clements*, the satisfaction will be expunged from the record and the mortgage equitably reinstated against the Troskys, with the rights of the third party mortgagees to be determined separately. See *St. Clements*, 190 A. at 394.

### 2. Rights of PNC & HSBC as Third Party Creditors

By setting aside the satisfaction of M&T, the Debtors are returned to the positions they

were in prior to the entry of the erroneous satisfaction. *Paul v. Eurich*, 39 W.N.C. 455, *3, 3 Pa. Super. 299, (Pa. Super.1897). However, Pennsylvania courts are clear that setting aside a satisfaction does not necessarily return M&T, the mortgagee, back to the front of the priority list when third party creditors are involved. See *Alliance Funding Co.,* 829 A.2d at 1182, and *St. Clements*, 190 A. at 394. The problem herein is what to do when you have two perfected secured parties (PNC and HSBC) and one party with an equitable[7] security interest (M&T).

Under Pennsylvania law, priority between multiple perfected interests is governed by the first in time, first in right principal. 42 Pa C.S.A. § 8141 and 21 P.S. § 622. The purpose of the recording statutes is to put prospective creditors on alert that the property may already be encumbered. *Beckman v. Altoona Trust Co.* 332 Pa. 545, 549, 2 A.2d 826 (1938). Looking to the time-line of filings in the instant case, M&T's lien was perfected on August 11, 1995, when it was recorded. That perfection lasted until February 5, 1998, when M&T erroneously filed the satisfaction[8]; the moment it filed the satisfaction its secured lien status converted into an equitable security interest against the Debtors. See, generally, *Alliance Funding Co.,* 829 A.2d at 1182, and *St. Clements*, 190 A. at 394. This equitable security interest was neither filed, nor perfected, and thus is not entitled to priority over conflicting perfected security interests filed after the date of the erroneous satisfaction. See, generally, 42 Pa C.S.A. § 8141. When PNC recorded their security interest on June 22, 1998, and HSBC recorded their security interest on

---

[7] The Court refers to M&T's interest as equitable during the post-satisfaction recordation time. While the erroneous satisfaction was recorded, M&T was not entitled to the status of a perfected creditor because no other creditor was on "notice" of their interest. As such, the Court deems M&T's interest to be equitable in that they retained the right to go to court and reinstate their mortgage but until they did so their interest was merely an unperfected interest with the option of reinstating perfection through litigation.

[8] By filing the satisfaction they essentially were telling the world, via the county recorder's office, our debt has been satisfied and we no longer retain this security interest.

September 9, 1999, both became paramount to M&T's equitable security interest.

At the end of the day, the priority of liens would be PNC with a secured claim of $54,318.17, HSBC with a secured claim for $28,708.54, then M&T with a secured claim of $121,143.25[9], a total of at least $204,169.96.

**IV**. **M&T's Lien and the Debtor's Ability to Employ the Powers of 11 U.S.C. § 522(h)**

Having established equity will restore the mortgage at least against the Debtor, the question remains can the Debtor use the powers granted to a Chapter 13 trustee as a bona-fide purchaser for value under § 544 to avoid the lien, because the lien was equitable at the time of the filing? Debtors claim they have the authority to do this pursuant to § 522(h) which states in pertinent part:

> (h) The debtor may avoid a transfer of property of the debtor or recover a setoff to the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee could have avoided such *transfer*, if- (1) such *transfer* is avoidable by the trustee under section 544, 545, 547, 548, 549, or 724(a) of this title or recoverable by the trustee under section 553 of this title; and (2) the trustee does not attempt to avoid such transfer.

11 U.S.C. 522(h)

A debtor's ability to employ § 522(h) is contingent on the applicability of § 522(g)(1). Section 522(g)(1) is a provision dealing with the exemption of property, allowing a debtor to exempt previously transferred property if-

> (1)(A) such transfer was not a voluntary transfer of such property by the debtor; and (B) the debtor did not conceal such property."

11 U.S.C. 522(g)(1).

The shortcoming in the Debtors' argument lies in the fact that there was no involuntary transfer of the Debtors' property. The transfer of property here was the Debtors voluntarily mortgaging

---

[9] This is the amount owed as of January 31, 2006.

[m:\users\cathy\opinions\...\5-05-bk-51389_Trosky.wpd]     -6-

Case 5:05-bk-51389-JJT   Doc 24   Filed 09/07/06   Entered 09/07/06 09:55:01   Desc
                    Main Document      Page 6 of 10

their property interests to M&T's predecessors, Franklin First Savings Bank, for $129,300 back in 1995. Because the Debtors could not have exempted any property under § 522(g)(1), they cannot avoid a transfer of property under § 522(h).

**V. Can Debtors Strip the Lien in their Plan Despite § 1322(b)(2)?**

Finally, Debtors ask that, if this Court finds M&T is secured but in a position behind both PNC Bank and HSBC Mortgage Services, they be allowed to modify their plan and strip down the unsecured portion of M&T's claim through the Chapter 13 plan.[10] As proponents of this proposed modification, the plaintiffs bear the burden of proving the modification is permissible. See *In re Haas,* 76 B.R. 114, 116 (Bankr.S.D. Ohio 1987). However, before the Court can decide whether the mortgage can be modified, the Court must first decide the value of the home to determine whether there is an unsecured portion to strip down.

M&T values its claim, as of January 31, 2006, at $121,143.25. PNC and HSBC's security interests swallow up at least $83,026.71 of the equity. Whether M&T's claim can be subject to the stripping provision under § 1322(b)(2) is contingent on the value of the property. Debtors list the value of the home at $159,000, but M&T values the home at $225,000. The property was valued at $172,500 when the loan originated in 1995. The evidence before the Court regarding valuation includes: 1) a January 30, 2005 appraisal from Cheryl Roman for $159,000 (Debtor's Exhibit 3); 2) a July 1995 appraisal of the home for $172,500 (Debtor's Exhibit 4); 3) a December 12, 2005 residential broker price opinion stating a market value of $225,900 (Debtor's Exhibit 5); and 4) testimony by Frank Trosky at trial that the roof was leaking, the geothermal system was experiencing problems, the foundation was cracked, there

---

[10] Stripping off a lien is considered a modification for purposes of § 1322(b)(2). See, generally, *Dewsnup v. Timm,* 502 U.S. 410, 112 S.Ct.773, 784 (1992); and *In re Libby,* 200 B.R. 562, 566-67 (Bankr. D.N.J. 1996).

was practically a creek in the basement, and that two of the rooms in the home had mold. (Audio Record of 1/24/06 at 10:12 a.m.)

The Court finds the appraisal offered by the Debtors of $159,000 to be the best evidence of the home's value. The appraisal submitted by the Debtors is far more detailed than the valuation evidence submitted by M&T. Additionally, the Court finds germane the fact that M&T's appraisal is not even signed.

Subtracting the secured claims of PNC and HSBC results in a remaining equity of about $75,973.29. The question is, can Debtors modify their plan and strip down M&T's mortgage pursuant to § 506(a) despite the language in § 1322(b)(2)? Section 1322(b)(2) states in pertinent part:

> (b) Subject to subsections(a) and (c) of this section, the plan may- (2) modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principal residence*, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;

11 U.S.C. 1322(b)(2) (emphasis added)

Debtors argue they have authority to modify the plan because "the Defendants mortgage is not secured due to the satisfaction piece being filed prior to the commencement of the bankruptcy filing, the mortgage is not now subject to the anti-modification protection of § 1322(b)(2)." The Debtors' contention fails by virtue of the fact the Court has found the lien to be secured at least with respect to the Debtors. Debtors make no other arguments regarding why this lien is eligible for stripping under § 506 despite the anti-modification clause in § 1322. Although the Court recognizes that the Third Circuit has held a security interest in anything above and beyond the principal residence itself is modifiable[11], Debtors do not raise this

---

[11] *In re Hammond,* 27 F.3d 52 (3d Cir. 1994); and Colliers ¶ 1322.06[1][a][ii].

argument in their moving papers nor did they point to any provision in the mortgage itself suggesting the security interest covers more than their principal residence.  In sum, as proponents of the modification, it was the Debtors' burden to establish the lien could be stripped despite § 1322(b)(2).  Having failed to point to evidence the mortgage covered anything other than Debtors' principal residence, the request to strip the lien is denied.

## VI. Conclusion

In sum, the Court finds M&T at all times retained an equitable security interest in Debtors' real property.  This equitable security interest, however, was insufficient to trump PNC and HSBC's perfected security interests in the Debtors' home and, as such, M&T has lost its first priority status and is now third in line behind PNC and HSBC's mortgages.  The Court further finds that Debtors may not invoke the Trustee's § 544 avoidance powers via § 522(h) because no transfer of Debtors' property was made, making § 522(h) inapplicable.  Finally, the Court finds that Debtors may not strip down M&T's lien because Debtors failed to point to evidence that the mortgage is securing anything other that the Debtors' principal residence.

Finally, M&T seeks relief from the automatic stay on grounds the Debtors have failed to make the monthly post-petition mortgage payments in the amount of $1,694.40 for the months of August 2005 through October 2005 and $1,291.03 for the months of November 2005 though December 2005, with late charges of $43.56 per month.  (See M&T's' Motion, Doc. No. 19, ¶ 7.)  Debtors' answer admitted they had not made the payments, notwithstanding the fact their plan provides that they intended to pay off the mortgage if it was found to be valid.  (Doc. No 3, Proposed Chapter 13 Plan, ¶ 5(b).)  In light of the fact Debtors have not made any post-petition payments to M&T nor escrowed any funds to be paid to it, relief shall be granted insofar as

[m:\users\cathy\opinions\...\5-05-bk-51389_Trosky.wpd]   -9-

Case 5:05-bk-51389-JJT   Doc 24   Filed 09/07/06   Entered 09/07/06 09:55:01   Desc
Main Document   Page 9 of 10

M&T wishes to pursue foreclosure in state court.

An Order will follow.

Date: September 7, 2006

John J. Thomas, Bankruptcy Judge
(CMS)
*This opinion is electronically signed and filed on the same date.*